Plch v. Warden                          CV-03-548-SM   08/31/04
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Vaclav Plch,
      Petitioner

      v.                                    Civil No. 03-548-SM
                                            Opinion No. 2004 DNH 127
Jane Coplan, Warden,
New Hampshire State Prison,
      Respondent


                          **O R D E R**


      In August of 1999, the dismembered body of a woman was found

in the Piscataquog River in Manchester, New Hampshire.  The

victim was identified as Mary Stetson and an autopsy revealed

that she died as a result of multiple stab wounds.  Petitioner,

Vaclav Plch, soon became a suspect and, after detectives located

him in Texas, he was charged with Stetson's murder.


      During the course of his criminal trial, Plch moved to

suppress incriminatory statements he had given to police,

asserting that they had been obtained in violation of his Miranda

rights.  See Miranda v. Arizona, 384 U.S. 436 (1966).

Specifically, Plch claimed that the interrogating officers had:

(1) conducted the functional equivalent of interrogation after he

had invoked his right to counsel; and (2) failed to adequately and accurately inform him of the full panoply of Miranda rights, including, in particular, the right to have counsel present during any questioning. The trial court denied Plch's motion and he was convicted of Stetson's murder. In affirming Plch's conviction on appeal, the New Hampshire Supreme Court specifically addressed and rejected his Miranda claims. State v. Plch, 149 N.H. 608 (2003). Plch is currently serving a sentence of life in prison without the possibility of parole.

Plch now seeks federal habeas corpus relief, see 28 U.S.C. § 2254, advancing the two Miranda claims that he fully exhausted at the state court level. And, suggesting that there are no genuinely disputed material facts, Plch moves for summary judgment. The State objects and has itself moved for summary judgment.

**Standard of Review**

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to

2

claims adjudicated on the merits in state court has been substantially limited. Under AEDPA, a federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 399 (2000).

Here, Plch attacks the underlying state court decision pursuant to section 2254(d)(1). So, to prevail on his petition, he must demonstrate that the state court's rejection of his Miranda claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

The United States Supreme Court recently explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> [T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

4

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original). With those principles in mind, the court turns to Plch's petition.

**Discussion**

I.   Factual Background.

Because Plch does not challenge the factual findings made by the state trial court and adopted by the state supreme court, see 28 U.S.C. § 2254(d)(2), they will be presented as set out in State v. Plch, supra.

> Lieutenant Putney interviewed the defendant in a police
> station interview room.  He advised the defendant of his
> rights by reading each right listed on the Austin Police
> Department's Miranda form, and asking the defendant if he

5

understood that right.  With regard to the right to counsel, the following conversation took place:

MP    Okay. It says you have the <u>right to have a lawyer present to advise you prior to you [sic] during any questioning</u>.  Do you understand that?

VP    Mmm.

MP    Okay.  If you are unable to hire a lawyer - okay, if you can't afford a lawyer - you have the right to have, ah, you have a right to have a lawyer appointed to you - <u>to advise you prior to and during any questioning</u>.

VP    Yeah, what does that mean?

MP    That means that if you can't afford one, what happens is you can apply uh, in court, you fill out an affidavit - a financial affidavit saying that you can't afford a lawyer and the court will appoint one for you.

VP    Mmm.

MP    You understand that?

VP    Yeah.

The defendant signed the <u>Miranda</u> waiver form and the interview proceeded for approximately forty-five minutes.  At that point, the defendant stated: "Now I want my lawyer."  The following colloquy then occurred:

MP    You want a lawyer?

VP    Yeah.

MP    You can have a lawyer, but we know what happened that night Billy.  And you'll get a lawyer.  This was going to be an opportunity, I guess for you to try to convince us of the person you really are.  But, that's not gonna happen.  And you know what?  You're all done. We can't talk to you any longer Billy.

6

VP    I, I -

MP    Billy, look at me, just look at me and listen to me a
      minute.  Okay?  We can not talk to you any longer.  You
      asked for a lawyer.  And I have to play by the rules.
      You understand that?

VP    Ya.

MP    I cannot ask you any more questions.  As much as I'd
      like to, I can't do that.  If you have a change of
      heart and you want to stand up and be the man you want
      to be and let us know where those body parts are so
      that family can rest, then you have to tell somebody
      when you go down stairs that you want to talk to the
      Detectives.  We cannot go to you.  We cannot talk to
      you any longer.  You have something to say, you have to
      tell them that you want to talk to the Detectives.  Do
      you understand?

VP    I understand.

The defendant was then left alone in the room for
approximately twenty minutes until Lieutenant Putney
returned and informed him of the charge he faced, which
prompted the following exchange:

MP    But, this is the complaint against you?  I just want
      you to make sure that it's clear.  Okay?  You're being
      charged with second degree murder, okay?  That you
      caused the death of Mary Stetson by stabbing her
      multiple times in the chest, okay?  That's what this
      complaint states, okay?  Do you have any questions with
      that at all?

VP    That's life [in] prison, right?

MP    Ahh.  Well, the penalty is up to the judge and we're
      not there yet - we're not there yet.  You understand?

VP    Mmm.

7

MP   It's serious - you understand that?

VP   It's serious.  Very serious.

MP   It is serious.  Taking somebody's life is serious....

Approximate forty minutes later, Detective Soucy and Austin Police Detective Thompson took the defendant to the booking room.  <u>The defendant began to make potentially incriminating statements to Detective Soucy, who immediately informed the defendant that he could not speak to him because he had requested an attorney.  The defendant nevertheless indicated twice that he wanted to talk at that time</u>.  Detective Soucy consulted with Detective Thompson who proposed that they finish the booking process and give the defendant time to think.  Detective Thompson then gave the defendant the telephone extension of the homicide unit and told him to have the booking officers call if he still wished to talk.

Meanwhile, the detectives went to the homicide unit where Detective Soucy spoke by telephone with the New Hampshire attorney general's office.  Upon advice of an assistant attorney general, Detective Soucy brought the defendant back to an interview room to allow him a chance to speak.  The defendant was read his <u>Miranda</u> rights, which he waived.  During the ensuing interview, the defendant made incriminating statements, including revealing where he had disposed of the missing body parts.  The defendant was also interviewed again the next day after an additional <u>Miranda</u> waiver.

The defendant moved to suppress his statements to the detectives in the Texas interviews on the grounds that Lieutenant Putney: (1) conducted the functional equivalent of interrogation of the defendant after he had requested counsel; and (2) failed to "adequately and accurately" inform the defendant of his right to have counsel present during questioning.  The trial court denied the motion.  On appeal, the defendant

8

contends that the court erred in its rulings on both grounds.

State v. Plch, 149 N.H. at 610-613 (emphasis supplied).


II.  Petitioner's Claims.

A.    Interrogation After Invocation of Right to Counsel.

In resolving petitioner's Miranda claims, the state supreme court first concluded that Lieutenant Putney's recitation of the charges pending against Plch (after Plch had invoked his right to counsel), was not the functional equivalent of interrogation. State v. Plch, 149 N.H. at 614 (citing Rhode Island v. Innis, 446 U.S. 291 (1980)).  That decision is neither contrary to, nor did it involve and unreasonable application of, clearly established federal law.  While the Supreme Court has not directly addressed that issue, several circuit courts of appeal have done so and concluded that informing a suspect of the charges pending against him or her is not the functional equivalent of interrogation. See, e.g., Enoch v. Gramley, 70 F.3d 1490, 1500 (7th Cir. 1995) ("Briefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of interrogation."); United States v. Payne, 954 F.2d 199, 202 (4th Cir. 1992) ("[T]he Innis definition of interrogation is not so

9

broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."). See also United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998).

The state supreme court did, however, conclude that Lieutenant Putney's statements to Plch concerning Ms. Stetson's missing body parts, which were also made after Plch had invoked his right to counsel, were "reasonably likely to elicit an incriminating response from the suspect." State v. Plch, 149 N.H. at 614 (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). Accordingly, the court concluded that "the police violated the dictates of Miranda and Innis by failing to cease interrogation of the [petitioner]." Id. at 616.

Nevertheless, the court recognized that if, following his or her invocation of the right to counsel, a suspect initiates further discussions with the police, accompanied by a knowing and intelligent waiver of the right he or she had previously invoked, the trial court may admit the suspect's responses to further

10

questioning.  Id. at 616 (citing Edwards v. Arizona, 451 U.S. 477

(1981) and Smith v. Illinois, 469 U.S. 91 (1984)).  Applying

those principles to the facts presented in petitioner's case, the

court concluded that Plch initiated contact with the police

officers and held that such contact was not prompted by the

officers' earlier improper statements.  Id. at 617 ("Given the

significant time lapse and the [petitioner's] continued denials

[of any knowledge regarding the location of the victim's missing

body parts], we conclude that the [petitioner's] initiation of

dialogue with the police was not prompted by Lieutenant Putney's

improper comments.").  Next, the court concluded that the state

had demonstrated, beyond a reasonable doubt,[1] that, prior to

resuming his conversation with police, petitioner knowingly and

intelligently waived his previously invoked right to counsel.

Id. at 617.

_____

[1]     The New Hampshire Supreme Court has held that, under
the state constitution, the government must establish that a
defendant has knowingly and voluntarily waived his or her Miranda
rights by proof beyond a reasonable doubt.  See State v. Gullick,
118 N.H. 912, 915 (1978); State v. Phinney, 117 N.H. 145, 146-47
(1977).  That standard of proof is higher than required by the
United States Constitution, see, e.g., Colorado v. Connelly, 479
U.S. 157, 168 (1986), and application of that higher standard
obviously inures to the defendant's benefit.  It is, for that
reason, neither "contrary to" nor an "unreasonable application
of" clearly established federal law.  See generally Early v.
Packer, 537 U.S. at 8.

11

The state supreme court plainly invoked and applied pertinent Supreme Court precedent in resolving Plch's claim. And, the court's determination that Plch initiated contact with the police officers and voluntarily waived his Miranda rights cannot be said to have resulted from an unreasonable application of that precedent. Consequently, as to the claim that he was subjected to custodial interrogation in violation of his constitutional rights, Plch's petition for habeas corpus necessarily fails.

B.   Adequacy of Miranda Warnings.

Next, Plch makes two related arguments about the quality of the Miranda warnings he received: first, he suggests that his interrogators failed to adequately explain his right to have counsel present with him during any questioning; and, second, he asserts that the officers implicitly suggested that his right to consult with counsel attached only at some future point in time (perhaps when he returned to New Hampshire and could apply to the court for appointed counsel).  According to Plch, those shortcomings entitle him to the habeas corpus relief he seeks.

As with his first claim, Plch advances a thorough and well-supported argument in support of his view that the officers who interrogated him violated the teachings of Miranda. Significantly, however, that is not the focus of this court's inquiry. In fact, this court lacks jurisdiction to engage in a de novo review of the substance and quality of the warnings issued to petitioner. Instead, this court may only consider whether, in resolving Plch's claims, the state supreme court arrived at a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as interpreted by the Supreme Court. See 28 U.S.C. § 2254(d)(1).

The Supreme Court has clearly articulated the standard by which the adequacy of Miranda warnings is measured:

> Miranda has not been limited to station house questioning and the officer in the field may not always have access to printed Miranda warnings, or he may inadvertently depart from routine practice, particularly if a suspect requests an elaboration of the warnings. The prophylactic Miranda warnings are not themselves rights protected by the Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected. Reviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings

13

> reasonable convey to a suspect his rights as required
> by <u>Miranda</u>.

<u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989) (citations and
internal punctuation omitted) (emphasis supplied).

In applying that law and resolving Plch's <u>Miranda</u> claims,
the state supreme court observed that, "[e]xamination of the
entire sequence of <u>Miranda</u> warnings [during Plch's first
interrogation] reveals that Lieutenant Putney actually read the
rights to presence of counsel and appointment of counsel
separately, asking the [petitioner] after each whether he
understood that right."  <u>State v. Plch</u>, 149 N.H. at 618.  A
transcript of that interview reveals the following exchange
between Lieutenant Putney ("MP") and Plch ("VP"):

> MP:  Now I'm going to go over - go over these with you
>      ah, so you understand them okay?
>
> VP   Mmm.
>
> * * *
>
> MP   It's all, it's all written down here so I'll be able to
>      go right over it with you and make sure you understand
>      it.  If you have any questions, then you can - you can
>      ah, ask me and I'll answer them for you.
>
> VP   Mmm.

14

                              *  *  *

     MP   Okay.  It says you have the right to have a lawyer
          present to advise you prior to you [sic] during any
          questioning.  Do you understand that?

     VP   Mmm.

Transcript of First Interview with Vaclav Plch on August 15,

1999, Appendix to Respondent's Memorandum (document no. 17), at

18-19.  Later during that first interview, the interrogating

officers pressed Plch for details about the evening of Ms.

Stetson's murder and Plch responded by saying, "Now I want my

lawyer," id. at 42, and the interview was terminated.  At a

minimum, Plch's response demonstrates that he understood that he

had the right to terminate the interview at any time and that he

had the right to consult with an attorney before answering any

additional questions.


     Subsequently, Plch initiated contact with the officers and

told them he wanted to talk with them.  At the outset of that

second interview, the following exchange took place:

     JS   Do you remember saying that something bad
          happened, but you think it was the alcohol?  Okay.
          We went over that blue form.  That was your
          Miranda rights - in the other room.

                               15

VP    Yes, yes.

MP    We're gonna go over them again with you.

VP    You don't have to, I remember.

MP    I know you remember, but you have the right not to talk to us. You know that, right?

VP    But I want [to] and that's my choice.

MP    Yes it is. And you know that you have a right to an attorney.

VP    Yes.

MP    And you know that if you cannot afford an attorney, one will be appointed to you. You understand that?

VP    Yes.

MP    Okay, and you understand that you have a right to stop answering questions at any time, okay? You just say the word - the same rules apply as a little while ago. We're all gonna be gentlemen over this thing here. No hard feelings. You understand? Okay. <u>Do you wish to talk to us now without a lawyer</u>?

VP    Yes.

MP    Okay.

VP    But I am going to need one anyway. No, not now.

MP    Okay. You're gonna get one eventually, but <u>right now you're willing to talk without one. You sure about that</u>?

VP    <u>Yes</u>.

MP    <u>I want to make sure that you're sure.</u>

      VP    I'm sure.

      MP    Okay.  Why don't you tell us what you want to tell us.

Id. at 46-47 (emphasis supplied).  In light of the record
evidence, as well as the New Hampshire Supreme Court's
identification and application of pertinent Supreme Court
precedent, this court cannot conclude that the state court's
resolution of Plch's claim that he was inadequately informed of
his right to have counsel present during any questioning was
either contrary to or involved an unreasonable application of
clearly established federal law.  The court plainly applied
relevant Supreme Court precedent and concluded, not unreasonably,
that the warnings given to Plch "reasonably convey[ed] to [the]
suspect his rights as required by Miranda."  Duckworth v. Eagan,
492 U.S. at 203.


      With regard to petitioner's final assertion - that
Lieutenant Putney implicitly linked his right to counsel with
Plch's return to New Hampshire - the state supreme court noted:

          The [petitioner] also argues that Lieutenant Putney's
          explanation of the right to appointment of counsel
          implied that he could only obtain counsel once he got
          back to New Hampshire and could apply "in court."  The

                                17

> trial court found that Lieutenant Putney's "statements
> did not impermissibly link the [petitioner's] right to
> counsel to some unspecified future time" after
> interrogation by the police. We agree. Lieutenant
> Putney explicitly stated twice that the [petitioner]
> had the right to have counsel present "prior to and
> during any questioning." We therefore find no error.
> Nor do we find any other portions of the interview
> cited by the [petitioner] indicate his failure to
> understand this right. Accordingly, we conclude that
> the warnings given the [petitioner] adequately informed
> him of his right to counsel.

Id. at 618-19 (citation omitted).

As it did in resolving Plch's related Miranda claim, the state court identified and applied pertinent Supreme Court precedent in resolving Plch's assertion that he was inadequately apprised of his right to the appointment of an attorney before proceeding with any further questioning. And, regardless of whether this court might apply that law in a manner more favorable to Plch, "neither the reasoning nor the result of the state-court decision contradicts" that law. Early v. Packer, 537 U.S. at 8. Consequently, petitioner has not established (nor can he establish) that the state court's resolution of his claims was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

18

2254(d)(1). Nor has petitioner established that the state court's resolution those claims was based upon an "unreasonable application" of that law. Id.

## Conclusion

For purposes of reviewing Plch's federal habeas corpus petition, the court need not (and, in fact, lacks jurisdiction to) determine whether the state court's resolution of his claims was "correct" or "incorrect." See Williams, 529 U.S. at 410-11 ("Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). In other words, the question before this court is not whether it might have ruled differently on the claims that Plch advanced before the state supreme, nor is it whether the state supreme court's resolution was "correct" under applicable precedent. Instead, the issue is whether the state court decision is in conflict with, or amounts to an unreasonable application of, federal law. It is neither.

19

The record in this case discloses that, in resolving Plch's Miranda claims, the state supreme court: (1) properly identified applicable Supreme Court precedents; and (2) applied those precedents in a thorough and thoughtful way that cannot be deemed "unreasonable." Accordingly, Plch is not entitled to federal habeas corpus relief under section 2254.

In light of the foregoing, the State's motion for summary judgment (document no. 16) is granted. Plch's motion for summary judgment (document no. 14 ) is denied, as is his petition for habeas corpus relief (document no. 3). The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 31, 2004

cc:  Vaclav Plch, pro se
     Michael A. Delaney, Esq.